# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BLOCK COMMUNICATIONS, INC., *et al.*, | * | Case no.: 23-3584 |
| | * | District Court case no.: 3:18-cv-01315 |
| Appellants, | | |
| | * | |
| v. | * | |
| | * | |
| MOORGATE CAPITAL PARTNERS, LLC, *et al.*, | * | |
| Appellees. | * | |

## APPELLANTS' MOTION FOR STAY

Appellants Block Communications, Inc. and BCI Mississippi Broadband, LLC ("BCI") move the Court for an order pursuant to Rule 8(a)(2), F.R.App.Proc. staying the valuation proceedings now pending in the District Court until a final decision by this Court in the present appeal. On July 24, 2023, BCI requested by motion that the District Court enter such a stay. *Motion to Stay Valuation Proceeding*, R #123. The District Court denied the motion in an order filed September 11, 2023. *Memorandum Opinion and Order*, R #129.

**A.     The District Court proceedings.**

The case from which the present appeal has been taken involves a contract dispute regarding, in part, the valuation of a telecommunications business (MaxxSouth) owned by Appellant Block Communications, Inc. The contract provided that the value would be determined "by the mutual agreement of [the parties] or, in the event the parties are unable to agree *** then by an independent third party valuation firm reasonably acceptable to [the parties]," and that value would be "based upon an analysis of the recent prices paid by purchasers of similar companies under similar circumstances." *Memorandum Opinion & Order*, March 1, 2021, R. #70 at PageID #8962 & #8980 (quoting R. #49-3 & R. #49-8) ("*Summary-Judgment Order*"). The contract was silent as to the choice of a valuation firm in the event that the parties could not agree to a value and no firm was mutually acceptable to them.

Initially, the District Court ordered the parties to specifically perform their contractual obligations to select a firm. *Summary-Judgment Order*, R. #70, PageID #8982. When the parties were unable to agree on a firm, the District Court modified its order and required the parties to nominate slates of valuation firms. *Order*, June 3, 2021, R. #75, PageID #8991. The court then selected one of the nominees (Houlihan Lokey, which was not among BCI's acceptable choices) and ordered the parties to engage that firm to conduct the contractually required valuation. *Order*, Jan. 3, 2022,

R. #100, PageId #9874; *Order*, June 7, 2022, R. #104, PageId #9926 & #9927.[1]

On March 27, 2023, BCI learned that one of Houlihan's managing directors (Chuck Wiebe) had left the firm in July 2022 but remained a consultant until the end of October 2022. While a consultant, Wiebe began discussions about joining Appellee Moorgate Capital Partners, which had (and has) a direct and substantial financial interest in the outcome of the valuation process. Wiebe did in fact join Moorgate in late 2022 – as its third-highest-rank employee, and while still maintaining close relationships with those of his just-barely former Houlihan colleagues who were responsible for the MaxxSouth valuation. None of the Appellees disclosed these events to BCI prior to BCI's independent discovery of them at the end of March 2023. *Plaintiffs' Motion to Disqualify*, May 2, 2023, R. #115.

Following inquiries to Appellees about these transactions, BCI moved for an order to disqualify and replace Houlihan as the third-party valuator on the ground that Wiebe's relationships with Moorgate and Houlihan created, at a minimum, an appearance of a disqualifying conflict of interest and lack of independence. *Id.* On July 7, 2023, the District Court overruled this motion. *Memorandum Opinion & Order*,

---

[1] In its order denying a stay, the District Court reaffirmed that its orders regarding the selection of Houlihan-Lokey were entered as orders of specific performance of the parties' contract. *Memorandum Opinion and Order*, Sept. 11, 2023, p. 2 n. 3, R #129 PageID #10221 (referring to "my order directing specific performance of the valuation provision").

July 7, 2023, R. #119, PageID #10059; *Judgment Entry*, July 7, 2023, R. #120. On July 17, 2023, BCI filed notice of its appeal from the District Court's order and judgment entry. *Notice of Appeal*, R. #122.

On July 24, 2023, BCI moved in the District Court for a stay of the valuation proceedings during the pendency of this appeal pursuant to Fed. R. Civ. P. 62(d). R. #123. The District Court overruled the motion on September 11, 2023. R. #129. In its decision, the court concluded that BCI had failed to show a "'strong or substantial *likelihood* or *probability* of success on the merits" in the present appeal or the existence of "serious questions" about the correctness of the court's decision. *Id.*, PageID #10222, quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985) (emphasis in original). Nor, according to the District Court, had BCI shown irreparable harm from the denial of a stay, reasoning that the unavailability of immediate appeal from judicial-recusal decisions foreclosed any claim that BCI would be irreparably injured by being required to continue with Houlihan-Lokey as the court-designated "independent valuation firm." *Id.*, PageID #10223. Because the court regarded these two considerations as dispositive, it found it unnecessary to address the remaining factors governing the propriety of a stay pending appeal (i.e., whether a stay would cause substantial injury to the opposing party, and the public interest). *Id.*

**B.     This Court should stay the valuation proceedings in the District Court.**

Whether proceedings that are the subject of an interlocutory appeal should be stayed depends on an assessment of: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (1991). *See also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

As this Court has said, "[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Griepentrog*, 945 F.2d at 153. Thus, "a movant need not always establish a high probability of success on the merits. The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere 'possibility' of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, 'serious questions going to the merits.'" *Id.*, 945 F.2d at 153-154, quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985) (citations omitted).

In this case, the appropriate weighing of the material considerations argues

-5-

strongly in favor of staying the ongoing valuation process in the District Court pending this Court's determination as to the lawfulness of that process.

### 1.     The appeal raises serious and substantial questions on the merits.

The parties' contract called for the valuation of MaxxSouth by "an independent third party valuation firm reasonably acceptable to [the parties]," with valuation determined by "an analysis of the recent prices paid by purchasers of similar companies under similar circumstances." The contract was silent as to the course to be taken when no firm could be found that was reasonably acceptable to all the parties. *Summary-Judgment Order*, R. #70 at PageID #8962 & #8980. When the parties were unable to agree on a valuation firm, the District Court itself selected a firm from slates of nominees and, as a matter of specific performance, ordered the parties to engage the court-selected firm. *Order*, Jan. 3, 2022, R. #100, PageId #9874; *Order*, June 7, 2022, R. #104, PageId #9926 & #9927.

Whether the District Court could, as a matter of specific-performance law, direct the parties to engage a valuation firm that was not acceptable to both parties is not at issue on this appeal.[2] But the doubtfulness of the court's authority in that

---

[2] The parties' failure to mutually agree on a selection could be remedied by the standard contract remedies: either damages or specific performance. But the authority to award specific performance does not include departures from or additions to the parties' agreement. "'It is the contract as the parties have made it and in its precise terms, and not otherwise, of which the court decrees performance. Any other

(continued...)

regard magnifies the importance of assuring that the court-selected valuation firm be in fact "independent," as required by the contract, and that the firm's valuation be based solely on the contractually defined criterion for valuation (comparison to recent sales of similar companies).

In the motion the denial of which is the subject of the present appeal, BCI argued that the appropriate standard for Houlihan's independence was by analogy to the standards for recusal of judges and others involved in judicial decision-making. *Memorandum in Support of Motion to Disqualify*, May 2, 2023, R. #115-1, PageID #9967 to #9969. The relationship between Houlihan-Lokey and Appellee Moorgate creates, at a minimum, a substantial appearance of impropriety, especially when viewed in the context of Moorgate's and Houlihan's utter failure to disclose the relationship until it was independently discovered by BCI (and also in the context of Moorgate's

---

[2](...continued)
performance would not be specific.'" *Hanahan v. DPA Development, LLC*, 2021-Ohio-1212 ¶ 32, 171 N.E.3d 462, 472 (Ohio App. 2021), quoting *Lyon v. Jackson*, 72 Ohio Law Abs. 5, 7, 132 N.E.2d 779 (Ohio App.1955). At the same time, a damages remedy in this case could hardly involve a direction by the court that the parties hire a specified expert to decide the contested value question. A determination of damages would require, rather, a trial at which the parties could each present their own evidence of value and at which the value would be decided by the trier-of-fact on the basis of that evidence. *See Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989) (parties cannot be required to arbitrate when they have not agreed to do so); *In re LaMarre*, 494 F.2d 753, 756 (6th Cir. 1974) ("no judge can compel a settlement prior to trial on terms which one or both parties find completely unacceptable").

consistent failures to be forthcoming about other financial conflicts-of-interest during the BCI-Moorgate relationship). Such an appearance is, without doubt, a basis for disqualifying judicial decision-makers. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). And it is equally a ground for the disqualification of other court-appointed non-judicial third-party decision-makers. *See,e.g.*, *Rockies Express Pipeline, LLC v. 4.895 Acres of Land*, 2010 WL 3001665 at *4 (S.D. Ohio July 30, 2010) (land commissioners appointed under Rule 71.1, F.R.Civ.Proc.).

BCI's motion to disqualify Houlihan-Lokey raised, at a minimum, substantial and serious questions both as to the appropriate standard for determining Houlihan's independence within the meaning of the parties' contract and as to whether the facts here are sufficient to show a lack of the requisite independence. The District Court's answers to those questions were adverse to BCI's position, but the questions are no less substantial and serious on that account.

### 2. BCI will be irreparably harmed in the absence of a stay.

In the absence of a stay, BCI will be forced – by the District Court's order and thus under pain of contempt – to continue participating in a valuation process conducted by a valuator whose relationship to an opposing party is disqualifying. In the event that this Court reverses the District Court's refusal to disqualify Houlihan, BCI will then have been subjected to costs and information-disclosure requirements that cannot be recouped or undone by monetary relief. And, far more fundamentally,

BCI's forced participation will cause it to suffer a non-compensable and hence irreparable injury to its due-process rights by subjecting BCI to a process tainted by the appearance of impropriety during the entire pendency of this appeal.[3]

The District Court declined to view the matter in those terms. If being forced to go forward before a disqualifiable tribunal inflicts irreparable harm, the court reasoned, then orders denying recusal of judges would be immediately appealable, and they are not. This, the court appears to have concluded, refutes the prospect that proceeding before a disqualifiable tribunal creates irreparable harm. *Memorandum Opinion and Order*, R #129 PageID #10223.

The District Court was, first of all, mistaken as to the reviewability of recusal decisions. Non-recusal decisions *are* in fact reviewable by the Courts of Appeals by way of a proceeding in mandamus, a remedy that also requires a showing of irreparable harm. *In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136, 1143 (6th Cir. 1990) (en banc) (mandamus is appropriate "under circumstances involving alleged conflict of interest and/or appearance of impropriety under [§ 28 U.S.C.] § 455"). By focusing solely on appealability instead of reviewability, that is, the court's irreparable-harm

---

[3] As any number of courts have held, the on-going denial of constitutional rights – including due-process rights – in and of itself constitutes irreparable harm. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Obama for Am v. Husted*, 697 F. 3d 423, 436 (6th Cir. 2012); *Friedmann v. Parker*, 573 F. Supp 1221 (M.D. Tenn. 2021).

reasoning appears to have conflated a procedural question (appellate jurisdiction) and a substantive question (what constitutes irreparable harm).

As BCI has argued (and will argue), judicial-disqualification decisions afford a useful analogy in identifying the proper standard for disqualification of a valuation firm selected by the court as part of a specific-performance decree. But the substantive similarity in standards has no bearing on the appropriate procedure for review of the relevant decisions. Recusal decisions are reviewable by mandamus, but they are not appealable because they are not injunctions within the meaning of the interlocutory-appeal statute. 28 U.S.C. § 1292. A refusal to modify a specific-performance decree, on the other hand, is reviewable by interlocutory appeal because it fits squarely within the terms of section 1292.

So too, the use of different procedural devices for reviewing recusal decisions and for staying specific-performance decrees supports no inferences about the presence or absence of irreparable harm in either class of cases. In this case, the denial of a stay will force BCI to continue its participation in a tainted valuation process causing irreparable harm to its due-process rights. That is a more than sufficient basis to enter a stay.

### 3. A stay will not substantially injure Appellees.

The District Court did not address the question of injury to the Appellees (or the public interest), having concluded that its views of the merits and of irreparable

harm were alone a sufficient basis to refuse a stay. But it is clear that a stay will not cause significant or substantial injury to Appellees.

If this Court enters a stay and then affirms the District Court's refusal to modify its specific-performance orders by disqualifying Houlihan-Lokey, the only practical effect will have been a modest delay in the completion of the valuation process. If, on the other hand, this Court reverses the District Court on this point, Appellees and BCI will then have both benefitted from the immediate cessation of work by a supposedly neutral party who is in fact unqualified due to the lack the contractually required independence.

In the District Court, Appellees argued that a stay would increase their costs and expenses and would "further prolong this litigation." Doc. 124, PageID #10083. But those classes of injuries are hardly material to the propriety of a stay, since they are the kinds of costs that inhere in the grant of *any* stay pending appeal. They are, moreover, costs that will arise, if at all, only in the event the appealed order is affirmed. If, by contrast, the order is reversed, the result of the stay will be an *avoidance* of costs as to *all* parties, since that much less of Houlihan Lokey's work will need to be redone on remand.

### 4.  The public interest favors a stay.

A stay in this case will preserve the public interest in maintaining fairness and regularity in proceedings to enforce contractual obligations. It is, after all, the parties'

actual contracts that are to be enforced, which in this case means valuation by an "***independent*** third-party valuation firm" (emphasis added). Proceedings to determine whether the selection of Houlihan Lokey conforms to that contractual requirement necessarily advance the public interest in contract enforcement. And there is too a strong public interest in fair, regular, and impartial proceedings that favors the availability of effective appellate review of injunctive specific-performance orders. Entry of a stay would advance both of these interests by assuring that none of the parties is required to participate in a potentially biased valuation process before there is an authoritative adjudication that it must do so.

**C.**     **Conclusion.**

For the foregoing reasons, Appellants respectfully request that this Court enter an order staying the valuation process that is now being conducted pursuant to the District Court's orders, and that this stay remain in force until a final decision by this Court in the present appeal.

    /s/ *Fritz Byers*
Fritz Byers (0002337)
414 N. Erie St., 2nd Floor
Toledo, Ohio 43604
Telephone: (419) 241-8013
Fax: (419) 241-4215
E-mail: fritz@fritzbyers.com

                                          Matthew T. Kemp (0093136)
                                          Peter R. Silverman (0001579)
                                          SHUMAKER, LOOP & KENDRICK, LLP
                                          1000 Jackson Street
                                          Toledo, Ohio 43604
                                          Telephone: (419) 321-1206
                                          Fax: (419) 241-6984
                                          E-mail: mkepmt@shumaker.com
                                                                  psilverman@shumaker.com

                                          *Attorneys for Appellants*
                                          *Block Communications, Inc. and*
                                          *BCI Mississippi Broadband, LLC*

## CERTIFICATE OF SERVICE

     This will certify that on September 14, 2023 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                      /s/ *Fritz Byers*
                                                      Fritz Byers (0002337)